AMERICAN FEDERATION OF GOVERNMENT EMPLOYEES, Local 2513, AFL–CIO, Petitioner,

v.

FEDERAL LABOR RELATIONS AUTHORITY, Respondent.

No. 85–1770.

United States Court of Appeals, District of Columbia Circuit.

Argued Nov. 14, 1986.

Decided Nov. 20, 1987.

Petition for Review of an Order of the Federal Labor Relations Authority.

Martin Cohen, Washington, D.C., for petitioner; William J. Stone and Mark D. Roth were on the brief.

Pamela P. Johnson, Atty., Federal Labor Relations Authority, with whom Ruth E. Peters, Sol., Steven H. Svartz, Deputy Sol. and Ira Sandron, Atty., Federal Labor Relations Authority, Washington, D.C., were on the brief for respondent.

Before: STARR and BUCKLEY, Circuit Judges, and GASCH,* District Judge.

Opinion for the Court filed by District Judge GASCH.

GASCH, District Judge:

## I. Introduction

The petitioner in this case, the American Federation of Government Employees, AFL–CIO Local 2513 ("AFGE" or "Union"), challenges a decision of the respondent, the Federal Labor Relations Authority ("FLRA" or "Authority"), revoking the right of members of Local 2513, who are also employee supervisors, to vote in union elections to appoint local officers.[1] *See United States Dep't of Labor,* 20 F.L.R.A. 34 (Sept. 26, 1985). The case is properly before this Court pursuant to 5 U.S.C. § 7123(a).[2] For reasons hereafter dis-

---

* Of the United States District Court for the District of Columbia, sitting by designation pursuant to 28 U.S.C. § 294(d).

1. Throughout this opinion, the affected parties will be referred to as supervisor-members.

2. 5 U.S.C. § 7123(a) provides, in relevant part, that

> any person aggrieved by any final order of the Authority ... may, during the sixty-day period beginning on the date on which the order was issued, institute an action for judicial review of the Authority's order ... in the United

cussed, we reverse the decision of the FLRA.

## II. BACKGROUND

On January 12, 1982, Local 2513,[3] representing the employees of the Department of Labor ("Labor Department" or "Labor"), conducted a secret-ballot election by mail to name the Local's officers. Susan Wuchinich, the newly elected Secretary-Treasurer, protested the election on May 8, 1982, by letter directed to the Labor Department's Labor Management Services Administration ("LMSA").[4] Wuchinich's transmission made two allegations: that supervisors in Local 2513, although proper members of the union, had impermissibly voted in the election and that Local 2513's election committee had not complied with certain attendance requirements mandated by union regulations.[5]

After investigation, the LMSA determined that the failure to abide by the attendance rule might have violated certain union by-laws. On the basis of this finding, the union agreed to hold a new election. The LMSA found Wuchinich's allegation regarding supervisor-member voting to be outside the scope of the complaint since she had not first exhausted her intraunion remedies. Dissatisfied, Wuchinich wrote a second letter urging the Director of the LMSA to decide whether supervisory

personnel could vote in elections of union officials. LMSA Director, Richard Hunsucker, advised Wuchinich that the union's practice of allowing supervisors to vote was not violative of the Labor Management Reporting and Disclosure Act, as amended, 29 U.S.C. § 401 *et seq.* (1982 and Supp. II 1984) ("LMRDA"), or any of its accompanying regulations. *See, e.g.,* 29 C.F.R. § 208.29. Hunsucker acknowledged that a union's constitution, by-laws or established practices could bar supervisors from voting but found none of these factors applicable in the case before him. *See* Letter of Richard Hunsucker (Director of the LMSA) to Susan Wuchinich (Secretary-Treasurer of Local 2513) (reply to letter of Oct. 16, 1982), Joint Appendix at 138.

Thereafter, Wuchinich filed an unfair labor practice charge with the FLRA against the Labor Department.[6] Her complaint alleged violations of the FLRA's chartering statute, the Civil Service Reform Act of 1978 ("CSRA" or "the Act"), 5 U.S.C. §§ 7116(a)(1), (3)[7] and 7120(e).[8] The complaint did not allege that any supervisor had coerced or attempted to coerce another union member with regard to the election. Rather, the complaint stated that the margin by which certain officers won their positions was narrow and, as such, the supervisors' votes "might" have determined the election's outcome. Because of

States Court of Appeals for the District of Columbia.
 The final order of the FLRA was issued on September 26, 1985. Notice of appeal was timely filed on November 22, 1985.

3. Local 2513 is a member and agent of the National Council of Field Labor Locals.

4. The LMSA administers the responsibilities of the Assistant Secretary of Labor for Labor Management Relations ("Assistant Secretary") pursuant to 5 U.S.C. § 7120, and the regulations accompanying that statute. *See* 29 C.F.R. § 207 *et seq.*

5. The latter claim is not before the Court.

6. The AFGE was permitted to join the proceeding as a party in interest pursuant to the Authority's regulations. 5 C.F.R. § 2423.19(g).

7. CSRA Section 7116(a)(1) and (a)(3) provide in relevant part that "(a) for the purpose of this chapter, it shall be an unfair labor practice for

an agency—(1) to interfere with, restrain, or coerce any employee in the exercise by the employee of any right under this chapter; ... (3) to sponsor, control, or otherwise assist any labor organization, other than to furnish, upon request, customary and routine services and facilities if the services and facilities are also furnished on an impartial basis to other labor organizations having equivalent status." 5 U.S. C. § 7116(a)(3).

8. Section 7120(e) provides in relevant part that "this *chapter* does not authorize *participation in the management* of a labor organization or acting as a representative of a labor organization by a management official, a supervisor, or a confidential employee, except as specifically provided in this chapter, or by an employee if the participation or activity would result in a conflict or apparent conflict of interest or would otherwise be incompatible with law or with the official duties of the employee." 5 U.S.C. § 7120(e) (emphasis added).

this possibility, Wuchinich characterized the supervisors' participation as an unlawful interference with the administration of the union. *See* Wuchinich Complaint (April 11, 1983), Joint Appendix at 119–21.

The Administrative Law Judge ("ALJ") considering Wuchinich's claims ruled that the FLRA had jurisdiction over the stated claims and that supervisors could vote in union elections in certain circumstances. He reached the latter decision on the basis of this Court's ruling in *Local 636, Plumbers v. NLRB*, 287 F.2d 354 (D.C.Cir.1961). *See United States Dep't of Labor*, 20 F.L.R.A. No. 34 at 317, 318.

The FLRA decision adopted without comment the ALJ's conclusion that the Authority had jurisdiction to determine whether the Labor Department had committed an unfair labor practice. *See United States Dep't of Labor, supra*, 20 F.L.R.A. at 297. But, the Authority rejected the ALJ's holding that the relationship between particular supervisors and management should determine a supervisor's right to vote in union elections. Rather, based on its construction of the statute and certain policy considerations, the FLRA found that supervisor-member participation in union local elections was *per se* an unfair labor practice under sections 7116(a)(1), (3) and 7116(b)(8). *Id.* at 298–301.

### III. JURISDICTION OF THE FLRA

■ As a preliminary matter, the AFGE once again raises the question of whether the Authority had jurisdiction to deny supervisor-members the right to vote in union elections. The FLRA based jurisdiction to hear the unfair labor practice charge before it on sections 7116 and 7120 of the CSRA. It is undisputed that the FLRA generally has the power to hear unfair labor practices claims. *See Bureau of Alcohol, Tobacco & Firearms v. FLRA*, 464 U.S. 89, 93, 104 S.Ct. 439, 442, 78 L.Ed.2d 195 (1983). The petitioner's charge is that section 7120 of the CSRA cannot provide the basis for such a claim. Subsection (e) of that provision states that, "[t]his chapter does not authorize participation in the management of a labor organization by a

... supervisor ... if the participation or activity would result in a conflict or apparent conflict of interest." 5 U.S.C. § 7120(e); *United States Dep't of Labor, supra*, 20 F.L.R.A. at 300. The FLRA simply assumed the propriety of its finding that voting is "participation" pursuant to section 7120 and amounts to an unfair labor practice under sections 7116(a)(1), (3) and 7116(b)(8).

Conversely, the AFGE maintains that section 7120 is not a tool which the FLRA may use to prevent unfair labor practices. The Union regards section 7120 as a mechanism to be applied only by the Assistant Secretary of Labor for Labor Management Relations and only for the purpose of regulating union elections in the public sector. For support the AFGE relies on section 7120(d) which provides that

> [t]he Assistant Secretary shall prescribe such regulations as are necessary to carry out the purposes of this section [7120]. Such regulations shall conform generally to the principles applied to labor organizations in the private sector. Complaints of violations of this section shall be filed with the Assistant Secretary. In any matter arising under this section, the Assistant Secretary may require a labor organization to cease and desist from violations of this section and require it to take such actions as he considers appropriate to carry out the policies of this section.

5 U.S.C. § 7120(d). This construction cannot withstand close scrutiny and must be rejected.

In *Wirtz v. Bottle Blowers Ass'n*, 389 U.S. 463, 468, 88 S.Ct. 643, 646, 19 L.Ed.2d 705 (1967), the Supreme Court noted the unusual character of federal labor laws:

> [w]e have cautioned against a literal reading of congressional labor legislation; such legislation is often the product of conflict and compromise between strongly held and opposed views, and its proper construction frequently requires consideration of its wording against the background of its legislative history and in light of the general objectives Congress sought to achieve.

Such concerns are particularly apt in the instant case. The AFGE argues that subsection (d) of section 7120, literally read, confers exclusive jurisdiction on the Assistant Secretary of Labor to carry out the purposes of section 7120(a)–(f). *See* Pet. Brief at 9. If this is true, only the Assistant Secretary, an official of the Department of Labor, has jurisdiction to employ section 7120(e) to determine whether voting by supervisor-members constitutes "participation in management." In effect, the Union contends that section 7120 is nothing more than a supplement to the LMRDA, prescribing standards the Assistant Secretary may use to regulate union elections.

We do not view section 7120's role so narrowly. Several sources belie the Union's position. By its own terms, subsection (e), the subsection at issue, reaches beyond section 7120 to embrace all of Title VII of the CSRA. *See* 5 U.S.C. § 7120(e) ("[t]his *chapter* does not authorize participation in management . . ." (emphasis added)). The Union's neglect of this language violates the canon of construction requiring that " 'effect must be given, if possible, to every word, clause and sentence of a statute' so that no part will be inoperative or superfluous, void or insignificant." *In re Surface Min. Regulation Litig.*, 627 F.2d 1346, 1362 (D.C.Cir.1980) (quoting from 2A Sutherland, Statutory Construction § 46.06).

Furthermore, in failing to consider subsection 7120(e)'s reach, the Union ignores Congress' general objectives in enacting the CSRA. *See Wirtz, supra*, 389 U.S. at 468, 88 S.Ct. at 646. Title VII defines the whole of labor-management and employee relations in the federal sector. *See* 5 U.S. C. §§ 7101–7135. Toward the end of protecting federal employees' rights and enforcing their obligations to the government, *id.* at § 7101(a), (b), Congress created the FLRA. *Id.* at § 7105. It is clearly Congress' will that "the Authority shall provide leadership in establishing policies and guidance relating to matters under *this chapter.*" *Id.* at § 7105(a)(1) (emphasis added). The Authority is further charged with the duty to "take such other actions as are necessary and appropriate to effectively administer the provisions of *this chapter.*" *Id.* at § 7105(a)(2)(I) (emphasis added). These purposes cannot be reconciled with the Union's construction of section 7120, disallowing all FLRA administration of that section.

We interpret section 7120 as providing concurrent jurisdiction to the Assistant Secretary of Labor and the FLRA. We further conclude that only the FLRA has jurisdiction to adjudicate unfair labor practice charges under the section. The relevant legislative history manifests an intention by Congress to limit the Assistant Secretary's jurisdiction to breaches of a union's internal standards of conduct, like election procedures and proper nominating requirements.[9] In testimony before the ALJ, the

---

**9.** The Civil Service Reform Act of 1978 evolved from Senate Bill 2640. *See* S. 2640, 95th Cong., 2d Sess., 124 *Cong.Rec.* 5477 (1978); Conf.Rep. No. 1717, 95th Cong., 2d Sess. (1978). Other than the Senate Report accompanying Bill 2640, there is a dearth of legislative history explicating section 7120. *See generally* S.Rep. No. 969, 95th Cong., 2d Sess. (1978), U.S.Code Cong. & Admin.News 1978, p. 2723. Thus, only the Senate Report is of assistance in understanding the role Congress envisioned the Assistant Secretary of Labor to play under Title VII of the CSRA. The Report states that

> [a] major aspect of Federal personnel management under S. 2640 will be carried out by a new Federal Labor Relations Authority. At present, this responsibility is shared by the Assistant Secretary of Labor for Labor-Management Relations and the part-time Federal Labor–Relations Council. The Assistant Secretary is charged with decisionmaking re-

garding unfair labor practices, and the Council serves as an appellate body. S. 2640 provides for consolidation of this authority in a single administrative organization, which is impartial by virtue of its independence from any direct responsibility to the incumbent administration, and which has a statutory mandate to govern Federal labor-management activities and procedures.

*Id.* at 7, U.S.Code Cong. & Admin.News 1978, p. 2729. In defining the powers and duties of the FLRA, the Senate noted that

> [t]he Authority shall decide appropriate unit questions, supervise elections, decide questions concerning eligibility for national consultation rights, and decide unfair labor practice complaints. Similar powers and duties are assigned to the Assistant Secretary of Labor for Labor-Management Relations under Executive Order 11491. Integration of the powers and duties of the Assistant Secretary,

Chief of the Labor Department's Office of Labor-Management Standards Enforcement corroborated this view. He conceded that the Department of Labor is not equipped to redress the kind of grievance stated by Ms. Wuchinich's complaint.[10] *See Testimony of Fred Heitmann, Branch Chief of the Office of Labor Management Standards Enforcement for the Department of Labor,* Joint Appendix at 77, 82, 86, 89. Construing section 7120 in the manner suggested by the petitioner would deprive union members from obtaining any relief for arguably unfair labor practices arising during the election process. Such an interpretation would contravene Congress' intent in promulgating Title VII generally and section 7120 specifically. Thus, we hold that the jurisdiction of the FLRA was proper.

## IV. REVIEW OF THE FLRA DECISION

 Having concluded that the FLRA had jurisdiction to judge the merits of this case, the Court must next determine whether the Authority's decision should be sustained. Section 7123 of CSRA provides that, "review of the Authority's order shall be on the record in accordance with § 706 of this Title [5 U.S.C. § 706]." *See* 5 U.S.C. § 7123(c). Under Section 706, FLRA orders must be reversed if they are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A); *e.g., Bureau of Alcohol, Tobacco & Firearms v. FLRA,*

*supra,* 464 U.S. at 97 n. 7, 104 S.Ct. at 444 n. 7. Concerning the kind of review section 706 requires, the Supreme Court recently wrote:

> [w]hen a Court reviews an agency's construction of the statute which it administers, it is confronted with two questions. First, always, is the question whether Congress has directly spoken to the precise question at issue. If the intent of Congress is clear, that is the end of the matter; for the Court, as well as the agency, must give effect to the unambiguously expressed intent of Congress. If, however, the Court determines Congress has not directly addressed the precise question at issue, the Court does not simply impose its own construction on the statute, as would be necessary in the absence of an administrative interpretation. Rather, if the statute is silent or ambiguous with respect to the specific issue, the question for the Court is whether the agency's answer is based on a permissible construction of the statute.

*Chevron U.S.A. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 842–43, 104 S.Ct. 2778, 2781–82, 81 L.Ed.2d 694 (1984); *see also American Federation of Government Employees, AFL–CIO v. FLRA,* 778 F.2d 850, 856 (D.C.Cir.1985).[11] Thus, in considering the merits of the FLRA decision, the Court is bound to give "considerable deference" to the agency's interpretation of the CSRA unless it clearly contravenes Congress' intent. Because we

---

except for decisions relating to alleged violations of the standards of conduct for labor organizations, in the Authority will improve coordination and eliminate the fragmented nature of the decision-making under the Executive Order between the Assistant Secretary and the Federal Labor Relations Council. The initial jurisdiction to decide alleged violations of the standards of conduct for labor organizations will be retained by the Assistant Secretary, who administers similar standards in the private sector.

*Id.* at 100, U.S.Code Cong. & Admin.News 1978, p. 2822. Finally, in its specific discussion of section 7120(d), the Senate envisioned the FLRA "review[ing] the Assistant Secretary standards of conduct decisions as the Federal Labor Relations Council now does under Executive Order 11491." *Id.* at 108, U.S.Code Cong. & Admin. News 1978, p. 2830.

**10.** The Court notes the absence of any *amicus curiae* brief by the Assistant Secretary. We interpret this silence as a further indication that the AFGE has misconceived the breadth of the Secretary's power under section 7120.

**11.** The Supreme Court in *Bureau of Alcohol, Tobacco & Firearms, supra,* 464 U.S. at 97, 104 S.Ct. at 444, earlier addressed the level of deference due the FLRA:

> [t]he FLRA was intended to develop specialized expertise in its field of labor relations and to use that expertise to give content to the principles and goals set forth in the Act.... Consequently, the Authority is entitled to considerable deference when it exercises its 'special function of applying the general provisions of the Act to the complexities' of Federal labor relations.

find the clear purpose of the legislature to be at odds with the FLRA's construction of section 7120(e), the agency's decision is overruled.

It is axiomatic that a court interpreting a statute must look first to the language of the provision in controversy. *See Lewis v. United States*, 445 U.S. 55, 60, 100 S.Ct. 915, 918, 63 L.Ed.2d 198 (1980). In construing subsection 7120(e), the FLRA was guided by this rule. The subsection provides, in relevant part, that

> this chapter does not authorize *participation in the management* of a labor organization or *acting as a representative of a labor organization* by a management official, a supervisor, or a confidential employee
>
> . . . .

5 U.S.C. § 7120(e) (emphasis added); *see United States Dep't of Labor, supra,* 20 F.L.R.A. at 300. In an attempt to give meaning to all the words in the subsection, the Authority noted that subsection 7120(e)'s language prohibits two activities: supervisors "acting as a representative of a labor organization" and the "participation [by supervisors] in the management of a labor organization." *Id.* The Authority concluded that the prohibition against supervisors acting as representatives of a labor organization encompassed a near limitless set of representative capacities, including acting as "an officer, a steward, a member of a bargaining committee or in any similar manner." *Id.* The Authority thus concluded that the alternative phrase, prohibiting "participation in [the] management" of a labor organization would be mere redundancy if it did not mean something additional. *Id.* Accordingly, the **FLRA held that**

> taking part in the selection of union officers to lead and direct the organization, or taking part in the selection of union options on alternative courses of action, constitutes [such] "participation in the

management of a labor organization," and is therefore proscribed by § 7120(e). *Id.*

We believe that such construction was unjustified and improper. The language in section 7120(e) may be given effect without being interpreted as broadly as suggested by the FLRA. Supervisors may be representatives of a labor organization without necessarily participating in union management. Construing representative duties as embracing "acting as an officer, a steward, a member of a bargaining committee or in any similar manner" *creates* the need to import new meaning into the phrase "participation in management." We thus disagree with the fundamental premise of the FLRA's interpretation: that representative duties are so far-reaching as to incorporate being an officer.

The Supreme Court recently noted that "[i]f the statute is clear and unambiguous 'that is the end of the matter, for the court, as well as the agency, must give effect to the unambiguously espoused intent of Congress,'" *Board of Governors of the Fed. Reserve Sys. v. Dimension Financial Corp.*, 474 U.S. 361, 368, 106 S.Ct. 681, 686, 88 L.Ed.2d 691 (1986) (quoting *Chevron U.S.A. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 842–43, 104 S.Ct. 2778, 2781, 81 L.Ed.2d 694 (1984)).

As we find the meaning of section 7120 clear, we need not consult its scant legislative history in order to ascertain its application in the case before us. *Dickson v. OPM*, 828 F.2d 32, 39–40 (D.C.Cir.1987). Rather, in accordance with the structure of the statute, we turn first to the prohibition of supervisor participation in union management.[12] The FLRA found that voting constituted participation in union management. *See United States Dep't of Labor, supra,* 20 F.L.R.A. at 300. This reading strains credulity. Managing entails the power to supervise directly an activity and the coordinate responsibility of

---

**12.** To effect its interpretation of subsection 7120(e), the FLRA was forced to contort the statute's meaning by reversing the order of the language of the provision. Although the provision first prohibits participation in union management and only then proscribes acting as a union representative, the FLRA viewed the latter prohibition as the one imbued with controlling meaning. *See United States Dep't of Labor, supra,* 20 F.L.R.A. at 300.

achieving results.[13] Citizens voting in a public election would surely be surprised to learn that their right to vote guaranteed them the right to participate in the direct supervision of the government. Voting guarantees representation in the governance process, not the right or opportunity to govern. Likewise, the right to cast a ballot to elect a union official is not to be equated with acting as representative of a labor organization. Acting as a union representative entails a greater degree of responsibility—the power and obligation of representing others besides oneself.[14] Consequently, we hold that the plain meaning of subsection 7120(e) does not proscribe the right of supervisor-members to vote in union elections.

Without more, the foregoing discussion suffices to overturn the agency's interpretation of subsection 7120(e). However, we believe that scrutiny of the cases and policy considerations relied upon by the FLRA is in order. Even though the Board acknowledges that "there is no analogous provision in the NLRA to section 7120(e) of the Statute," Brief for the FLRA at 17, it nevertheless relies primarily on NLRB cases applying private sector law as support for its interpretation of a provision unique to the public sector. While, in *Library of Congress v. FLRA*, we recognize that there are occasions where private sector case law is relevant to public sector labor relations, we note that the two areas are governed "by different statutory provisions and by different policy considerations." We then state:

> While these differences do not lead us to eschew completely the private sector model in defining the limits of negotiability in the public sector, we shall be careful to appreciate fully those distinctions between the private and public sectors

that might necessitate a different legal analysis and conclusion.

699 F.2d 1280, 1287 (D.C.Cir.1983) (footnote omitted). *Accord NTEU v. FLRA*, 826 F.2d 114, 122 (D.C.Cir.1987) ("while private sector law may provide useful guidance in certain instances, the [Federal Service Labor-Management] Act itself must ultimately be interpreted in the context of its *own* language, history, and case law" (citations omitted) (emphasis in original)). Because section 7120 is unique to the LMRDA, we conclude that this is one of those instances where reliance on private sector precedent is inappropriate.

We are thus free to consider the final issue which confronts us: whether the policy considerations motivating the FLRA decision are sufficient to rebut our conclusions. We do not find them sufficiently persuasive. The FLRA first wrote that sponsorship, control or assistance of the Union by management might constitute an unfair labor practice in violation of subsection 7116(a)(3) "*if* management officials, supervisors or confidential employees *were to influence* a union's choice of bargaining goals by voting in an election to determine those goals." *United States Dep't of Labor, supra* at 300 (emphasis added). However, the possibility of supervisor-member control of the Union is simply not an issue in this case. Susan Wuchinich, the Secretary-Treasurer of Local 2513, whose complaint against the Labor Department forms the predicate of this lawsuit, only alleged that supervisor-member votes "might" have determined the outcome of an election of officers. She nowhere questioned whether union policy goals voted on at local elections might be impermissibly influenced by supervisor-member voting. *See* Wuchinich Complaint (April 11, 1983), Joint Appendix at 119–21. Moreover, she testified that there was simply "no way of

---

13. Management is defined in Webster's Dictionary as "the conducting or supervising of something; the executive function of planning, organizing, coordinating, directing, controlling, and supervising any industrial or business project or activity with responsibility for results." *Webster's Unabridged International Dictionary* (3d ed. 1963).

14. A representative is defined in Webster's Dictionary as "one that stands for a number or class; one that represents another as agent, deputy, substitute or delegate usually being invested with the authority of the principal." *Webster's Unabridged International Dictionary* (3d ed. 1963).

knowing" whether the six or seven supervisor votes cast in Local 2513's election were determinative of the outcome of the election. *See* Testimony of Susan Wuchinich (Secretary of Local 2513) Before Administrative Judge William Naimark on January 10, 1984, p. 69, Joint Appendix at 75.

As an alternative policy consideration, the FLRA noted that

> the harm done to the independence of a labor organization cannot be measured only in terms of the number of votes cast by management officials, supervisors or confidential employees. Rather, such individuals, because of their positions of authority, *could* exert significant influence over rank and file employees in matters affecting the management or policies of the labor organizations.

*Id.* at 301, Joint Appendix at 162 (emphasis added). Once again, the Authority focused on a concern which is not a part of the record in this case. The election at issue was conducted by mail and union members did not sign their ballots. No evidence of coercion was ever introduced. Even if coercion were somehow possible, neither party claims that any supervisor attempted such an act.

Courts are charged to decide concrete controversies, not hypothetical or conjectural ones. On the record, the FLRA could not permissibly find that the supervisors who voted in Local 2513's election determined any union goals or exerted any influence over the rank and file members. We find that the FLRA's decision was founded wholly on conjecture, and therefore accord no weight to its policy-based support for its conclusion.

In sum, we reject the FLRA's determination that section 7120(e) of the CSRA prohibits supervisor-members from voting to elect union officials in local elections. Congress has not prohibited supervisors from joining unions. It is inconceivable that supervisor-members' right to belong to a union includes nothing more than paying dues and participating in various health plans. While Congress expressly prohibited supervisors from assuming policy-making and representative functions within the union, 5 U.S.C. § 7120(e), there is no evidence that Congress intended to deny supervisors one of the most essential vestiges of union membership, the right to cast a vote in the election of their union's officials. Therefore, the decision of the FLRA is

*Reversed.*

United States Court of Appeals, District of Columbia Circuit.