United States Court of Appeals

 FOR THE DISTRICT OF COLUMBIA CIRCUIT

 Argued November 17, 1997 Decided January 9, 1998 

 No. 95-1614

 Robert W. Wildberger, Jr., 

 Petitioner

 v.

 Federal Labor Relations Authority, 

 Respondent

 On Petition for Review of an Order of the 

 Federal Labor Relations Authority

 Robert W. Wildberger, Jr., appearing pro se, was on the 
briefs for petitioner.

 James A. Garcia, argued the cause for amicus curiae on 
the side of petitioner, with whom Dana C. Contratto, appoint-
ed by the court, was on the briefs.

 James F. Blandford, Attorney, Federal Labor Relations 
Authority, argued the cause for respondent. David M. 


Smith, Solicitor, and William E. Persina, Attorney, were on 
the brief. Pamela P. Johnson, Attorney, and William R. 
Tobey, Deputy Solicitor, entered appearances.

 Before: Edwards, Chief Judge, Wald and Randolph, 
Circuit Judges.

 Opinion for the Court filed by Chief Judge Edwards.

 Edwards, Chief Judge: Under the Civil Service Reform 
Act, codified at Title 5 of the U.S. Code, the Federal Labor 
Relations Authority ("FLRA" or "the Authority") is autho-
rized to address charges of unfair labor practices against 
federal employers, see generally 5 U.S.C. ss 7101-7135 
(1994); s 7116(a)-(c) (defining unfair labor practices), while 
the Merit Systems Protection Board ("MSPB" or "the 
Board") is authorized to adjudicate employees' appeals from 
"adverse personnel actions," including suspensions and termi-
nations of employment. See generally ss 7501-7543, 7701-
7703. At issue in this case is the Authority's interpretation of 
the first sentence of 5 U.S.C. s 7116(d), which provides that 
"[i]ssues which can properly be raised under an appeals 
procedure [before the MSPB] may not be raised as unfair 
labor practices prohibited under this section."

 Appellant Robert W. Wildberger, Jr., seeks review of the 
Authority's order dismissing three consolidated unfair labor 
practice complaints against his former employer, the Small 
Business Administration ("SBA"), for lack of jurisdiction pur-
suant to section 7116(d). In addressing Wildberger's claims, 
the Authority first clarified its rule for determining whether 
section 7116(d)'s jurisdictional bar applies. On this point, the 
FLRA held that when the factual predicate and the legal 
theory underlying an unfair labor practice complaint and a 
MSPB appeal are the same, the Authority will decline to 
assert jurisdiction over the unfair labor practice complaint. 
United States Small Business Admin. and Robert Wildber-
ger, 51 F.L.R.A. 413, 1995 WL 648828, at *7 (F.L.R.A. Oct. 
31, 1995) ("Wildberger [FLRA]"). Purporting to apply this 
rule, the Authority dismissed all three of Wildberger's consol-
idated complaints on jurisdictional grounds.


 We can find no basis for overturning the Authority's rule 
for denying jurisdiction under the first sentence of section 
7116(d) where: (1) the complaining employee has raised all of 
the issues that underscore his unfair labor practice charges--
in terms of both the factual predicate and the legal theories 
raised--in his appeal before the MSPB; (2) these issues are 
within the compass of the MSPB's jurisdiction; and (3) the 
MSPB has not declined jurisdiction over any of the claims 
raised by the employee. We find that the Authority correctly 
applied this rule in two of the three consolidated complaints. 
Our holding is narrowly tailored to the facts of this case and 
does not address the application of section 7116(d) where the 
factors emphasized here are not present.

 I. Background 

A. Statutory Scheme 

 In 1978, Congress enacted the Civil Service Reform Act to 
replace the prior "patchwork" system of laws governing fed-
eral employment with "an integrated scheme of administra-
tive and judicial review, designed to balance the legitimate 
interests of the various categories of federal employees with 
the needs of sound and efficient administration." United 
States v. Fausto, 484 U.S. 439, 445 (1988). Prior to the Act, 
federal employees could bring employment actions in a vari-
ety of administrative and judicial forums, sometimes leading 
to confusing and contradictory results. Under the Act's 
simplified scheme, employment matters involving federal em-
ployees' rights to engage in union-related activities generally 
may be raised with the FLRA as unfair labor practice 
charges, while matters involving hiring, firing, failure to 
promote, and the like are within the jurisdiction of the MSPB.

 A victim of an alleged unfair labor practice may petition the 
FLRA's General Counsel, who determines whether the alle-
gations constitute an unfair labor practice and, if so, files a 
complaint on behalf of the party making the allegations. 5 
U.S.C. s 7118. The FLRA may conduct hearings to resolve 
such complaints. s 7118(a)(6)-(8). Once it determines that a 
federal employer has committed an unfair labor practice, the 


FLRA is empowered to order broad remedial action prohibit-
ing the agency from engaging in similar activity as to all of its 
employees. See ss 7105(g)(3), 7118(a)(7); National Treasury 
Employees Union v. FLRA, 910 F.2d 964, 967 (D.C. Cir. 
1990) (en banc). Judicial review of FLRA decisions may be 
had in either the U.S. Court of Appeals for the circuit in 
which the aggrieved party resides or conducts business, or in 
the U.S. Court of Appeals for the District of Columbia. 
s 7123(a).

 The adverse personnel actions over which the MSPB has 
exclusive jurisdiction include: "(1) a removal; (2) a suspen-
sion for more than fourteen days; (3) a reduction in grade; 
(4) a reduction in pay; and (5) a furlough of thirty days or 
less." ss 7512, 7701. Decisions rendered by the MSPB 
regarding appeals of such actions are reviewable only by the 
United States Court of Appeals for the Federal Circuit. 
s 7703(b)(1).

 Chapter 23 of Title 5 sets forth Merit System Principles, 
including prohibited personnel practices, to guide the MSPB. 
ss 2301-2305. These principles prohibit any person who has 
authority to take an adverse action against a subordinate 
employee from doing so in retaliation for the subordinate 
employee's "exercise of any appeal, complaint, or grievance 
right granted by any law, rule, or regulation," s 2302(b)(9), 
including the exercise of rights referenced in s 7116(a). See, 
e.g., Bodinus v. Department of the Treasury, 7 M.S.P.R. 536, 
540-41 (1981) (construing s 2302(b)(9) to include union repre-
sentational activities); id. at 541-42 ("[W]hile the Board is 
without jurisdiction to adjudicate an unfair labor practice 
allegation based on anti-union animus, ... the Board may 
properly consider appellant's alleged evidence of anti-union 
animus if it is pertinent to showing his affirmative defense of 
a violation of 2302(b)(9).").

 Section 7116(d) provides:

 (d) Issues which can properly be raised under an ap-
 peals procedure may not be raised as unfair labor prac-
 tices prohibited under this section. Except for matters 
 wherein, under section 7121(e) and (f) of this title, an 
 employee has an option of using the negotiated grievance 
 

 procedure or an appeals procedure, issues which can be 
 raised under a grievance procedure may, in the discre-
 tion of the aggrieved party, be raised under the griev-
 ance procedure or as an unfair labor practice under this 
 section, but not under both procedures.

This provision is intended to simplify adjudication of employ-
ee rights and avoid the confusing and contradictory outcomes 
which could result if parties were permitted to adjudicate the 
same issue in a variety of administrative and judicial forums 
with overlapping jurisdiction. See Carter v. Kurzejeski, 706 
F.2d 835, 839-40 (8th Cir. 1983) ("Th[e] procedural frame-
work [of the Civil Service Reform Act] indicates the care 
taken by Congress to preserve the rights of aggrieved em-
ployees while avoiding the problems of overlapping and incon-
sistent jurisdiction. Congress obviously recognized multiple 
possibilities for jurisdiction by arbitrators, the FLRA, the 
MSPB, and the courts in fashioning this framework.").

B. Wildberger's Claims

 Appellant Wildberger was employed by the SBA as a 
program analyst from June 1980 until September 1992 when 
his employment was terminated. In the year immediately 
preceding his termination, Wildberger, a former president of 
the American Federation of Government Employees local 
that represents SBA employees, formed a rival union, Soli-
darity, USA ("Solidarity"). Wildberger spent considerable 
time that year trying to recruit SBA employees to join 
Solidarity. Wildberger engaged in his Solidarity-related un-
ion organizing activities during work hours, using agency 
resources and equipment such as the SBA e-mail system and 
SBA telephones.

 Due to clashes between Wildberger and SBA management 
over the manner in which he carried out his Solidarity-related 
activities, Wildberger filed unfair labor practice charges 
against the SBA, which resulted in the FLRA's issuance of 
the three complaints at issue here. The threat complaint, 
issued July 29, 1992, addressed Wildberger's claim that SBA 
supervisor James Charney had threatened to deny Wildber-


ger's training requests and to fire him unless "the conflict 
created by the labor organization Wildberger had formed" 
stopped. See Complaint and Notice of Hearing (No. 20821), 
J.A. 294-96. The proposed removal complaint, issued Octo-
ber 13, 1992, challenged the SBA's issuance on August 3, 
1992, of a letter proposing to terminate Wildberger on numer-
ous grounds, including his willful refusal to comply with SBA 
directives not to use SBA equipment and official work time to 
conduct Solidarity-related business. See Complaint and No-
tice of Hearing (No. 21010), J.A. 326-28. The disparate 
treatment complaint, issued November 20, 1992, alleged that 
the SBA had discriminated against Wildberger for engaging 
in protected activity by inundating him with memoranda, 
prohibiting him from using SBA equipment for personal use, 
and imposing other restrictions on him, even though other 
employees in his bargaining unit were not subject to such 
restrictions. See Complaint and Notice of Hearing (No. 
21060), J.A. 330-33.

 On September 16, 1992, the SBA terminated Wildberger 
for the reasons specified in the notice of proposed removal. 
See Final Removal Letter, J.A. 494-519. Wildberger appeal-
ed his termination to the MSPB. Wildberger argued to the 
MSPB that his termination was unlawful because, inter alia, 
(1) the termination was indicative of retaliation and discrimi-
nation based on his exercise of statutorily protected rights, as 
alleged in the disparate treatment and proposed removal 
complaints, and (2) the SBA official who proposed his remov-
al, James Charney, was motivated by personal animus against 
Wildberger. In alleging animus on the part of Charney, 
Wildberger referenced the same incidents alleged in the 
threat complaint.

 On February 7, 1994, an Administrative Law Judge for the 
FLRA ("FLRA-ALJ") held hearings on Wildberger's unfair 
labor practice complaints. The FLRA-ALJ recommended 
that the threat complaint and the disparate treatment com-
plaint be dismissed on the merits, based on his findings that 
the evidence presented as to each failed to prove by a 
preponderance of the evidence that the SBA had engaged in 
an unfair labor practice. J.A. 116, 124-28. The FLRA-ALJ 


recommended that the proposed removal complaint be dis-
missed pursuant to section 7116(d) for lack of jurisdiction. 
J.A. 119-20 (citing Department of Commerce, Bureau of the 
Census v. FLRA, 976 F.2d 882 (4th Cir. 1992)). Both Wild-
berger and the General Counsel for the FLRA filed excep-
tions to the FLRA-ALJ's recommendations.

 1. The MSPB Decision

 On May 4, 1995, the Administrative Law Judge hearing 
Wildberger's MSPB appeal ("MSPB-ALJ") concluded that 
the SBA had just cause for terminating Wildberger's employ-
ment. See J.A. 558-95. The Board affirmed the MSPB-
ALJ's decision, in relevant part, on March 6, 1996. Wildber-
ger v. SBA, 69 M.S.P.R. 667 (1996) (modifying in part and 
affirming in part). One of the bases for termination upheld 
by the MSPB-ALJ was Wildberger's willful refusal to comply 
with SBA directives not to use SBA equipment and official 
work time to conduct Solidarity-related business. J.A. 569-72 
(upholding charge 2 (insubordination)); J.A. 574-75 (uphold-
ing charge 4 (unauthorized use of government property)). 
The MSPB-ALJ also considered and rejected Wildberger's 
affirmative defenses, including his claim that the proposing 
official, James Charney, was motivated by personal animus, 
see J.A. 580-82, and his claim that the removal action was 
taken in retaliation for protected union activity. J.A. 587-90.

 2. The Authority's Decision

 On October 31, 1995, the Authority reviewed the FLRA-
ALJ's recommendations and dismissed all three unfair labor 
practice complaints on jurisdictional grounds. After first 
reviewing its own precedents as well as circuit law interpret-
ing section 7116(d), the Authority clarified its test for deter-
mining whether the jurisdictional bar imposed by the first 
sentence of section 7116(d) applies: when the factual predi-
cate and the legal theory underlying an unfair labor practice 
complaint and a MSPB appeal are the same, the Authority 
will decline to assert jurisdiction over the unfair labor prac-
tice complaint. Wildberger [FLRA], 1995 WL 648828, at *7. 
The Authority clarified that, because the FLRACunlike the 
MSPBChas jurisdiction to review unfair labor practice 


charges brought by labor organizations as well as individuals, 
it would retain jurisdiction over charges brought by labor 
organizations that focus on the organization's institutional 
interests, as opposed to the rights of an individual employee, 
notwithstanding any related MSPB appeals brought by indi-
vidual employees. Id. The Authority then dismissed all 
three of Wildberger's consolidated complaints as subject to 
section 7116(d)'s jurisdictional bar. Id. at *8-9.

 Wildberger, acting pro se, appealed the Authority's deci-
sions to this court, and the court appointed amicus curiae 
("Amicus") to present arguments on his behalf.

 II. Analysis

A. Standard of Review

 "[T]he Authority is entitled to considerable deference when 
it exercises its special function of applying the general provi-
sions of [the Civil Service Reform] Act to the complexities of 
federal labor relations." Bureau of Alcohol, Tobacco & Fire-
arms v. FLRA, 464 U.S. 89, 97 (1983) (internal quotations 
omitted). We defer to the FLRA's construction of its en-
abling statute, including its interpretation of its statutory 
jurisdiction, so long as it is reasonable and not contrary to 
congressional intent. Pension Benefit Guaranty Corp. v. 
FLRA, 967 F.2d 658, 665 (D.C. Cir. 1992) (citing Chevron 
U.S.A., Inc. v. Natural Resources Defense Council, Inc., 467 
U.S. 837, 842-44 (1984)); see also Oklahoma Natural Gas Co. 
v. FERC, 28 F.3d 1281, 1283-84 (D.C. Cir. 1994) (applying 
Chevron deference to agency's determination of its statutory 
jurisdiction). Section 7123(c) provides for judicial review of 
the Authority's orders on the record in accordance with the 
Administrative Procedure Act, 5 U.S.C. s 706. Accordingly, 
we "set aside the FLRA's order only if it is arbitrary, 
capricious, an abuse of discretion, or otherwise not in accor-
dance with law." Pension Benefit, 967 F.2d at 665.

B. Clarifying Section 7116(d)'s Jurisdictional Bars 

 In U.S. Dep't of the Army, Army Finance & Accounting 
Ctr. and American Fed'n of Gov't Employees, Local 1411, 38 


F.L.R.A. 1345 (1991) ("Army Finance"), enforced sub nom. 
American Fed'n of Gov't Employees, AFL-CIO, Local 1411 v. 
FLRA, 960 F.2d 176 (D.C. Cir. 1992) ("Local 1411"), the 
Authority developed a test for determining whether a griev-
ance brought under a contractual grievance procedure raises 
the same issue as an earlier-filed unfair labor practice charge 
for the purpose of applying the jurisdictional bar imposed by 
the second sentence of section 7116(d) (requiring an ag-
grieved party to choose between a contractual grievance 
procedure and filing an unfair labor practice charge with the 
FLRA). Under this test,

 [i]n determining whether the procedures involved the 
 same issue, the Authority does not focus on whether the 
 action was proposed or definite. Rather, the Authority 
 looks at whether the [unfair labor practice] charge arose 
 from the same set of factual circumstances as the griev-
 ance and the theory advanced in support of the [unfair 
 labor practice] charge and the grievance are substantially 
 similar.

Id. at 1350-51. The Authority found that the basic principles 
of preclusion outlined in Army Finance should be adopted 
here in applying the jurisdictional bar imposed by the first 
sentence of section 7116(d). Wildberger [FLRA], 1995 WL 
648828, at *7.

 We can find no quibble with the Authority's rule, insofar as 
it is limited to circumstances where (1) the complaining 
employee has raised all of the issues that underscore his 
unfair labor practice charges in his appeal before the MSPB; 
(2) these issues are within the compass of the MSPB's 
jurisdiction; and (3) the MSPB has not declined jurisdiction 
over any of the claims raised by the employee. Consistent 
with the test articulated by the Authority in Army Finance 
and affirmed by this court in Local 1411, the question of 
whether a complaining employee raises the "same issues" in 
both proceedings does not focus on whether the action was 
proposed or definite, but rather on whether the issues raised 
in the appeal arose from the same set of factual circum-
stances as the unfair labor practice complaint and the theory 


advanced in support of the unfair labor practice charge and 
the appeal are substantially similar. Cf. Army Finance, 38 
F.L.R.A. at 1350-51, affirmed sub nom. Local 1411, 960 F.2d 
at 178.

 Our holding is limited to the facts of this case. We decline 
to endorse the Authority's rule more broadly, because, frank-
ly, we are unsure just how the rule might be applied in 
situations not raised in this case. We also mean to make 
clear that we are not placing additional restrictions on the 
MSPB. When an employee raises issues for adjudication by 
the MSPB, it is for the MSPB to consider how each of the 
issues raised bears on the employee's appeal of the employ-
er's adverse action, i.e., whether the adverse action was taken 
in retaliation for Appellant's exercise of protected activities or 
whether instead the adverse action is to be upheld or re-
versed on some other ground.

 Both Wildberger and Amicus argue that this court's deci-
sion in Barnes v. Small, 840 F.2d 972 (D.C. Cir. 1988), 
requires a different interpretation of section 7116(d). We 
disagree. In Barnes, as here, the plaintiff attempted to raise 
the same issues in both an MSPB appeal and an unfair labor 
practice complaint. However, the General Counsel for the 
FLRA declined to issue a complaint to prosecute the unfair 
labor charges alleged by the plaintiff, upon finding that the 
plaintiff " 'had knowingly engaged in flagrant misconduct 
falling outside of the protection of the [Civil Service Reform 
Act].' " Id. at 980-81 (quoting FLRA General Counsel). The 
MSPB subsequently declined to exercise jurisdiction over 
affirmative defenses that reiterated the unfair labor practice 
charges that the FLRA General Counsel had declined to 
prosecute. Id. at 981. Significantly, in Barnes, the decision 
not to prosecute the unfair labor practice charges was on the 
merits, not on jurisdictional grounds pursuant to section 
7116(d). In other words, the court in Barnes affirmed the 
MSPB's decision to decline jurisdiction in a situation in which 
the FLRA General Counsel had already rejected the unfair 
labor practice charges for lack of merit. Id. Thus, both the 
facts and the legal issues in Barnes were substantially differ-
ent from those at issue here. Barnes did not involve review 


of the FLRA's interpretation of its jurisdiction under section 
7116(d), the issue presented in the case before us.

 Moreover, to the extent that language in Barnes can be 
read to suggest that the MSPB can never consider matters 
that could properly be raised as unfair labor practices before 
the FLRA, such language is dicta. Taken out of context, this 
language probably suggests more than the court intended. It 
is certainly clear that the MSPB not only can but must 
address issues that could properly underlie unfair labor prac-
tice charges where such issues are raised as affirmative 
defenses alleging "prohibited personnel practices." See 5 
U.S.C. s 2302(b)(9) (1994); Ireland v. Department of Health 
& Human Servs., Social Security Admin., 34 M.S.P.R. 614 
(1987); Bodinus, 7 M.S.P.R. at 540-42. Barnes does not 
foreclose this possibility. The decision in Barnes would be 
problematic only if the FLRA had dismissed the unfair labor 
practice complaints at issue in that case under section 7116(d) 
and then the MSPB had declined to consider the affirmative 
defenses raised by the employee. In such a situation, the 
employee would be without a forum in which to raise his 
complaints. That did not happen.

 Notwithstanding the Authority's stated exception for re-
taining jurisdiction over unfair labor practice charges focus-
ing on the institutional interests of labor organizations, Ami-
cus argues that, by refusing to exercise jurisdiction over 
unfair labor practice complaints focusing solely on individual 
rights, the Authority disregards its responsibility to provide 
systemic remedies for unfair labor practices. By so doing, 
Amicus contends, the Authority impermissibly frustrates the 
congressional intent of the Civil Service Reform Act. See 
Brief for Amicus at 17-31 (contrasting the Authority's broad 
remedial powers to order systemic relief, such as ordering an 
offending agency to cease and desist its unfair labor practices 
and posting public notices to that effect, with the Board's 
more limited remedial powers). In addition, Amicus argues 
that the Authority's interpretation of section 7116(d) "pro-
vides agencies with an incentive to fire employees in order to 
avoid unfair labor practice charges." Id. at 32-34.


 As Amicus contends, the FLRA's broad remedial powers 
are a central feature of the Civil Service Reform Act. To the 
extent that 7116(d)'s jurisdictional bar lessens the FLRA's 
role in cases where an individual raises the same issues in 
both an unfair labor practice charge and a MSPB appeal, 
however, the Authority's interpretation of section 7116(d) 
remains consistent with the Supreme Court's general under-
standing that Congress, in enacting the Civil Service Reform 
Act, sought to "balance the legitimate interests of ... federal 
employees with the needs of sound and efficient administra-
tion" within an "integrated scheme of administrative and 
judicial review" replacing the complicated "patchwork" sys-
tem that preceded the Civil Service Reform Act. See Fausto, 
484 U.S. at 445. Although Fausto did not focus on the 
Authority's jurisdiction to hear unfair labor practice com-
plaints in light of section 7116(d), the Court recognized in 
Fausto that "the primacy of the MSPB for administrative 
resolution of disputes over adverse personnel action," with 
judicial review by the Federal Circuit, is an important "struc-
tural element" evident in the framework of the Act. Id. at 
449 (citations omitted). It is likely that Congress' effort to 
balance competing concerns in the course of its comprehen-
sive overhaul of the civil service system entailed various 
trade-offs. The Authority's interpretation of how section 
7116(d) strikes the balance between the FLRA's jurisdiction 
to provide systemic remedies to vindicate the public interest 
in preventing unfair labor practices and the MSPB's exclusive 
jurisdiction over appeals of adverse actions is neither unrea-
sonable nor contrary to the purpose of the Act as articulated 
by the Supreme Court in Fausto.

 Wildberger also contends that a number of due process 
errors on the part of the MSPB support his claim that the 
FLRA should assert jurisdiction over his unfair labor practice 
complaints. However, the proper course for remedying such 
alleged errors is to seek review of the MSPB decision by the 
Federal Circuit. Such errors on the part of the MSPB would 
not render 7116(d)'s jurisdictional bar inapplicable or other-
wise provide a basis for collateral review of the MSPB 
decision by the FLRA or this court.


C. Whether Section 7116(d) Bars the Authority from Exer-
 cising Jurisdiction over Wildberger's Unfair Labor 
 Practice Charges 

 The record indicates that Wildberger raised all of the 
issues that underscored his consolidated unfair labor practice 
charges in his appeal before the MSPB. However, in a 
prehearing conference, the MSPB-ALJ stated that she de-
clined jurisdiction over Wildberger's allegations of unfair 
labor practices because unfair labor practice charges are 
outside the Board's jurisdiction. Conference Summary, J.A. 
90. The Board had instructed the MSPB-ALJ to allow 
Wildberger "an opportunity to present any and all nonfrivo-
lous affirmative defenses." Wildberger v. SBA, 65 M.S.P.R. 
673, 678 (1994). In a subsequent decision, the MSPB-ALJ 
did, in fact, consider Wildberger's affirmative defenses, in-
cluding his claim that the proposing official, James Charney, 
was motivated by personal animus, see J.A. 580-82, and his 
claim that the removal action was taken in retaliation for 
protected union activities. J.A. 587-90. The MSPB-ALJ 
ultimately decided that the SBA had good cause to terminate 
Wildberger's employment and rejected Wildberger's affirma-
tive defenses, and thus dismissed Wildberger's appeal on the 
merits. See J.A. 558-95. The Board affirmed this decision. 
Wildberger v. SBA, 69 M.S.P.R. 667 (1996) (affirming relevant 
parts of MSPB-ALJ's decision).

 In light of the sequence of events before the MSPB, it 
appears that the MSPB-ALJ's statement in the prehearing 
conference was meant to indicate that the ALJ would not 
exercise jurisdiction over Wildberger's allegations of unfair 
labor practices per se, even though she was required to 
address the issues underlying Wildberger's unfair labor prac-
tice charges to the extent that the same issues underscored 
his affirmative defenses. Accordingly, section 7116(d) would 
only bar the Authority's jurisdiction over Wildberger's unfair 
labor practice charges if the same issues underlying these 
chargesCi.e., the same factual predicates and legal theoriesC
were considered by the MSPB as affirmative defenses.


 1. The Proposed Removal Complaint

 The SBA's final letter of removal terminating Wildberger's 
employment essentially reiterated the same charges and spec-
ifications set forth in its letter proposing to remove him. 
Compare Final Removal Letter, J.A. 494-519 with Proposed 
Removal Letter, J.A. 298-325. Thus, the factual predicate 
underlying Wildberger's proposed removal complaint and his 
MSPB appeal are the same. See Local 1411, 960 F.2d at 178 
(holding that the distinction between proposed and actual 
agency action is a distinction without a difference which, if 
credited for the purposes of applying s 7116(d), "would drain 
s 7116(d) of much of its utility").

 The proposed removal complaint alleges that the SBA 
committed an unfair labor practice in violation of 5 U.S.C. 
s 7116(a)(1) (prohibiting federal employers from interfering 
with, restraining, or coercing any employee in the exercise of 
any right under chapter 71 of Title 5) by referencing Wildber-
ger's protected activity as a union organizer. In addressing 
Wildberger's affirmative defense that his employment was 
terminated in retaliation for protected union activity in viola-
tion of 5 U.S.C. s 2302(b)(9), the MSPB-ALJ applied the 
analysis articulated by the Board in Ireland, 34 M.S.P.R. at 
618-19. Under the Ireland analysis, to establish a claim of 
reprisal for union activities in violation of section 2302(b)(9), 
an employee must demonstrate that he engaged in an activity 
protected by statute, that he subsequently was subject to an 
adverse action, that the proposing and deciding officials knew 
that the employee was engaged in the protected activity, and 
that there was a causal connection between the protected 
activity and the adverse action. Id. The MSPB-ALJ found 
that, contrary to Wildberger's assertion, he did not possess a 
statutorily-protected right to utilize official time or other SBA 
resources for his union organizing activity. J.A. 587-88. 
Moreover, the MSPB-ALJ determined that Wildberger had 
failed to show a sufficient causal connection between any 
statutorily-protected activities in which he was engaged and 
the termination decision. J.A. 589-90. Thus, the same legal 
theoryCthat the termination was in retaliation for Wildber-
ger's protected activitiesCwas argued to both the FLRA and 
the MSPB, and this theory was rejected by the MSPB in the 


context of considering Wildberger's affirmative defenses. Ac-
cordingly, the Authority's determination that it was barred by 
the first sentence of section 7116(d) from exercising jurisdic-
tion over Wildberger's proposed removal complaint was not 
arbitrary and capricious.

 2. The Threat Complaint

 The threat complaint alleges that Wildberger's supervisor, 
James Charney, committed an unfair labor practice in viola-
tion of 5 U.S.C. s 7116(a)(1) by threatening to deny Wildber-
ger's training requests and to fire Wildberger if "the conflict 
created by the labor organization Wildberger had formed" did 
not stop. Complaint and Notice of Hearing (Case No. 20821), 
J.A. 295. These same issues were considered by the MSPB 
in the context of Wildberger's affirmative defense claiming 
that the proposing official (Charney) was motivated by per-
sonal animus. See J.A. 580-82.

 The record indicates that Wildberger alleged as an affirma-
tive defense that Charney was motivated by personal animus 
because Wildberger served him with the threat complaint one 
work day before Charney issued the letter proposing Wild-
berger's removal. See J.A. 580. The MSPB-ALJ reasoned 
that this allegation "may be analyzed in two ways: as a claim 
that Mr. Charney's impartiality had been compromised and as 
a claim that Mr. Charney retaliated against [Wildberger] for 
filing the FLRA complaint." J.A. 581. The MSPB-ALJ 
rejected the suggestion that Charney proposed Wildberger's 
removal in retaliation for Wildberger's filing of the threat 
complaint. J.A. 582. Furthermore, the MSPB-ALJ deter-
mined that "to prevail on the allegation of personal animus 
the appellant would have to show actual bias or the existence 
of an intolerably high risk of unfairness." J.A. 581 (citations 
omitted). Turning to Wildberger's assertion that Charney 
had illegally threatened him as evidence of Charney's alleged 
bias, the MSPB-ALJ considered the conflicting testimony of 
Charney and Wildberger and concluded that Wildberger had 
not shown, by credible evidence, that Charney had ever 
threatened him. J.A. 581. Thus, the MSPB addressed the 
central issue underscoring Wildberger's threat complaint in 


the context of considering his affirmative defenses. Accord-
ingly, the Authority's determination that it was barred by the 
first sentence of section 7116(d) from exercising jurisdiction 
over Wildberger's threat complaint was not arbitrary and 
capricious.

 3. The Disparate Treatment Complaint

 The disparate treatment complaint alleges that the SBA 
committed an unfair labor practice in violation of 5 U.S.C. 
s 7116(a)(1) by inundating Wildberger with memoranda, by 
prohibiting him from using various agency resources (such as 
e-mail) for personal reasons, and by imposing a number of 
other restrictions on him. Complaint and Notice of Hearing 
(Case No. 21060), J.A. 331-32. In addition, the complaint 
alleged that the SBA committed an unfair labor practice in 
violation of 5 U.S.C. s 7116(a)(2) (prohibiting federal employ-
ees from discouraging membership in any labor organization 
through discrimination in working conditions) by imposing the 
itemized restrictions on Wildberger while not applying the 
same restrictions to other bargaining unit employees. Id.

 When this complaint was initially considered by the FLRA, 
the General Counsel for the FLRA emphasized the discrimi-
natory nature of the restrictions imposed upon Wildberger, 
see J.A. 79-80, and the FLRA-ALJ decided the claim against 
Wildberger on the merits, not on jurisdictional grounds. See 
J.A. 120-27. The Authority, however, rejected the ALJ's 
determination and dismissed this claim under section 7116(d). 
Wildberger [FLRA], 1995 WL 648828, at *8-9.

 Although the MSPB-ALJ's determination that Wildber-
ger's use of agency resources for union organizing purposes 
was not statutorily-protected activity might be construed as a 
preclusive determination of Wildberger's claim that SBA or-
ders prohibiting such use violated section 7116(a)(1), the 
MSPB never addressed Wildberger's allegations of discrimi-
natory treatment in violation of section 7116(a)(2). Moreover, 
the record does not clearly indicate that these issues neces-
sarily came into play in the affirmative defenses considered 
by the MSPB. Thus, although to some extent the factual 
predicate underlying Wildberger's disparate treatment com-


plaint was addressed by the MSPB, the MSPB did not 
considerCand indeed declined jurisdiction overCone of the 
legal theories raised in this complaint. Accordingly, this 
complaint is remanded to the Authority for a decision on the 
merits.

 4.Wildberger's Complaints Focus on Individual, not Insti-
 tutional, Interests

 Significantly, the FLRA maintained that it will assert 
jurisdiction over unfair labor practice charges which affect 
union organizing on a larger scale, as opposed to the activities 
of a single individual who brings unfair labor practice 
charges, subsequently suffers an adverse action, and raises 
the same issues underlying the unfair labor practice charges 
in appealing the adverse action to the MSPB. Wildberger 
[FLRA], 1995 WL 648828, at *7. Whether or not a particular 
unfair labor practice charge fits within this exception in any 
given case is for the Authority to determine in the first 
instance. Although Wildberger suggests that he has "institu-
tional interests as National President of SOLIDARITY 
U.S.A.," see, e.g., Brief for Petitioner at 27, the unfair labor 
practice complaints were filed in Wildberger's name, not 
Solidarity's, and assert only Wildberger's individual rights to 
" 'form, join, or assist any labor organization ... freely and 
without fear of penalty or reprisal ...,' " not Solidarity's 
institutional interests per se. Id. (quoting 5 U.S.C. s 7102). 
Cf. Local 1411, 960 F.2d at 179 (" '[Section 7116(d)] does not 
preclude a union in its institutional capacity as an aggrieved 
party from filing an unfair labor practice charge to enforce its 
own independent rights merely because an employee has 
initiated an appeal or grievance ... based on the same factual 
situation to enforce his individual rights.' ") (quoting Corneli-
us v. Nutt, 472 U.S. 648, 665 n.20 (1985) (alterations in 
original)). Thus, the Authority's determination that Wildber-
ger's unfair labor practice complaints do not come within its 
stated exception for charges filed by labor organizations 
asserting their own institutional interests was not arbitrary 
and capricious.


D. Matters Not Reached 

 As noted above, our holding in this case does not purport to 
resolve how section 7116(d) might be applied in other situa-
tions which do not closely comport with the facts of this case. 
In particular, this case should not be interpreted to mean that 
all unfair labor practice charges involving an employee who 
subsequently appeals an adverse action to the MSPB should 
necessarily be subsumed into the MSPB proceeding. For 
example, suppose an employee who allegedly suffered harass-
ment from his employer for engaging in union organizing 
activities and filed unfair labor practice charges alleging such 
harassment was subsequently removed for alleged theft. If, 
in appealing the termination to the MSPB, the employee 
argues only that the employer's claim of theft cannot be 
sustained, not that the action was taken in retaliation for his 
union organizing activities, it is not clear whether section 
7116(d) should apply. Where the employee did not raise the 
issues underlying his unfair labor practice charges before the 
MSPB, the question of whether his unfair labor practice 
charges could be or should be subsumed into his MSPB 
appeal, or whether instead they are sufficiently separate to 
preserve the FLRA's jurisdiction over them notwithstanding 
the MSPB appeal, are questions that must be addressed by 
the FLRA in future cases.

 We also want to make it clear that our holding here is not 
intended as either an endorsement or a rejection of the 
Fourth Circuit's holding in Department of Commerce, Bureau 
of the Census v. FLRA, 976 F.2d 882 (4th Cir. 1992) ("Com-
merce"). The Authority's judgment in this case appears to 
rest on Commerce; this is hardly surprising, given that the 
decision in Commerce is broad enough to support the result 
reached by the FLRA here. But, on this record, we are not 
prepared to venture beyond the facts at hand.

 The Commerce court held that, under section 7116(d), once 
an employee had commenced a MSPB appeal, he was con-
strained to bring all his administrative claims in the MSPB 
proceeding and the FLRA was barred from adjudicating any 
unfair labor practice charges which are not "sufficiently dis-


crete from his challenge to his ultimate removal." Id. at 888. 
Both the facts and the holding in Commerce are distinct from 
the case before us. The issues underscoring the unfair labor 
practice charges in Commerce were adjudicated by the FLRA 
after a related MSPB appeal was filed but before the MSPB 
had adjudicated the appeal. See id. at 886. Therefore, the 
Commerce court could not frame its opinion in terms of issues 
actually presented to and considered by the MSPB, but 
instead reached the question of whether the issues underlying 
the unfair labor practice charges were necessarily subsumed 
into the pending MSPB proceeding. See id. at 890 (noting 
that, while the MSPB is barred from adjudicating ULP 
charges per se, the issues underlying the employee's ULP 
charge "may be raised in an MSPB procedure" as affirmative 
defenses) (emphasis added); cf. id. ("Only where [ ] initial 
disciplinary actions ripen into full-blown 'adverse employment 
actions' will sole jurisdiction vest in the MSPB under the first 
sentence of s 7116(d)."). The fact that the Fourth Circuit 
reached a question that this court reserves does not make 
this court's decision inconsistent with that in Commerce; the 
Fourth Circuit had a different case before it.

 III. Conclusion

 For the reasons explained above, we deny the petition for 
review challenging the Authority's dismissal of Appellant's 
proposed removal complaint and threat complaint pursuant to 
the jurisdictional bar imposed by the first sentence of section 
7116(d). However, we find that the Authority's jurisdiction 
over Appellant's disparate treatment complaint is not barred 
by section 7116(d). Accordingly, the disparate treatment 
complaint is hereby remanded for consideration on the merits 
by the Authority.

So ordered.