# United States Court of Appeals
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

———

Argued February 12, 2024         Decided May 14, 2024

No. 22-5319

ANTHONY W. PERRY,
APPELLANT

v.

GINA RAIMONDO, UNITED STATES SECRETARY OF COMMERCE,
ET AL.,
APPELLEES

———

Appeal from the United States District Court
for the District of Columbia
(No. 1:17-cv-01932)

———

*Nathaniel A.G. Zelinsky*, appointed by the court, argued the cause for appellant. With him on the briefs was *Catherine E. Stetson*, appointed by the court.

*Anthony W. Perry*, pro se, was on the briefs for appellant.

*Catherine Padhi*, Attorney, U.S. Department of Justice, argued the cause for appellees. With her on the brief were *Brian M. Boynton*, Principal Deputy Assistant Attorney General, and *Charles W. Scarborough* and *Stephanie Marcus*, Attorneys. *Derek Hammond* and *R. Craig Lawrence*, Assistant U.S. Attorneys, entered appearances.

2

Before: HENDERSON, PAN and GARCIA, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* PAN.

PAN, *Circuit Judge*.   Appellant Anthony Perry is a former employee of the Census Bureau (the "Bureau").   He retired pursuant to a settlement agreement, after the Bureau commenced procedures to fire him.   Perry challenged the circumstances of his departure from the agency by filing a "mixed case" appeal before the Merit Systems Protection Board (the "Board" or "MSPB"), which alleged violations of the Civil Service Reform Act ("CSRA") and various federal anti-discrimination laws.   The Board ultimately dismissed the case on the ground that it lacks jurisdiction under the CSRA over voluntary decisions to retire.   The district court reviewed the Board's decision, concluded that it was not arbitrary or capricious, and entered summary judgment in favor of the government.

On appeal, Perry argues that the district court erred by failing to consider his discrimination claims de novo, and by affirming the Board's dismissal of his case for lack of jurisdiction.   Because the district court did not allow Perry to litigate the merits of his discrimination claims, as required by statute, we reverse in part and remand for further proceedings on the discrimination claims.   We affirm the district court's conclusion that the Board properly dismissed Perry's mixed case for lack of jurisdiction.

**I.**

**A.**

Federal employees are protected from unlawful employment actions by two different — but overlapping — statutory regimes.

First, federal employees are protected by anti-discrimination laws, such as Title VII of the Civil Rights Act of 1964 ("Title VII") and the Age Discrimination in Employment Act of 1967 ("ADEA"). Title VII prohibits employment discrimination on the basis of race, color, religion, sex, or national origin, *see* 42 U.S.C. § 2000e–16; while the ADEA prohibits discrimination on the basis of age, *see* 29 U.S.C. § 633a. To make a claim under an anti-discrimination statute, a federal employee must go through an administrative process at the employing agency. *See Al-Saffy v. Vilsack*, 827 F.3d 85, 88 (D.C. Cir. 2016); 29 C.F.R. § 1614.101 *et seq*. At the outset, the employee has forty-five days to report the alleged discrimination to an Equal Employment Opportunity ("EEO") counselor. *Al-Saffy*, 827 F.3d at 85 (citing 29 C.F.R. § 1614.105(a)(1)). The counselor "will attempt an informal resolution," but if counseling does not resolve the employee's claim, "the employee may file a formal complaint with the employing agency itself, usually through that agency's [EEO] office." *Id.* (citing 29 C.F.R. § 1614.106). The agency then must "conduct an impartial and appropriate investigation of the complaint," and provide the employee with an investigative report. *Id.* (citing 29 C.F.R. § 1614.106(e)(2)) (cleaned up). Once it does so, the employee may request either an immediate decision from the agency or a hearing before an administrative law judge ("ALJ") employed by the Equal Employment Opportunity Commission ("EEOC"). *Id.* After the ALJ considers the complaint and issues a decision, *id.* at 88–89, the agency must enter a final order, stating whether it will fully implement the decision of the ALJ. 29 C.F.R. § 1614.110(a). The employee has the right to appeal the final order to the EEOC. *Al-Saffy*, 827 F.3d at 89. Moreover, after exhausting the above-described administrative remedies, the employee may file a discrimination case in the district court. *Id.*; *see also* 42 U.S.C. § 2000e-16(c).

Second, federal employees are protected by the CSRA, which "establishes a framework for evaluating personnel actions taken against federal employees." *Kloeckner v. Solis*, 568 U.S. 41, 44 (2012). Under the CSRA, an agency may not take a "particularly serious" adverse employment action against an employee — such as a removal, a suspension for more than 14 days, or a demotion, *id.* at 44 & n.1; *see* 5 U.S.C. § 7512 — unless doing so would "promote the efficiency of the service," 5 U.S.C. § 7513(a). The agency must demonstrate that the employee "engaged in misconduct," *King v. Frazier*, 77 F.3d 1361, 1363 (Fed. Cir. 1996), and that the adverse action appropriately promotes the efficiency of the service after accounting for various factors. *See Douglas v. Veterans Admin.*, 5 M.S.P.R. 280, 304–06 (1981). When an agency takes a serious adverse employment action, "the affected employee has a right to appeal the agency's decision to the MSPB, an independent adjudicator of federal employment disputes." *Kloeckner*, 568 U.S. at 44; *see* 5 U.S.C. § 7513(d). The employee might argue, for example, that they did not commit any misconduct, *see King*, 77 F.3d at 1363, or that the adverse action was too harsh and thus unnecessary to promote the efficiency of the service, *see Douglas*, 5 M.S.P.R. at 304–06. If the MSPB determines that the adverse action was justified under the CSRA, then the employee may seek judicial review of the MSPB's decision in the Federal Circuit. *See* 5 U.S.C. §§ 7703(a)–(c). The Federal Circuit will set aside an MSPB ruling only if it is "(1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) obtained without procedures required by law, rule, or regulation having been followed; or (3) unsupported by substantial evidence." *Id.* § 7703(c).

Sometimes, a federal employee alleges unlawful discrimination *and* a serious adverse employment action: The employee might allege, for example, that they were

terminated based on their race. That federal employee "may proceed in a variety of ways." *Kloeckner*, 568 U.S. at 45. The employee may bring a standard claim under Title VII by exhausting administrative remedies in the agency and then filing a case in the district court. *See Al-Saffy*, 827 F.3d at 85–89. Or instead, they may bring the case before the MSPB as a "mixed case," which combines a claim under a federal anti-discrimination statute with a challenge to a serious adverse employment action under the CSRA. *Kloeckner*, 568 U.S. at 50 ("[M]ixed cases" are "those appealable to the MSPB and alleging discrimination."); 29 C.F.R. § 1614.302(a)(2) (defining a "mixed case appeal" as one in which an employee "alleges that an appealable agency action was effected, in whole or in part, because of discrimination"). In a mixed case, the employee can appeal the adverse action directly to the MSPB, thereby "forgoing the agency's own system for evaluating discrimination charges." *Kloeckner,* 568 U.S. at 45. Alternatively, the employee may file an EEO complaint with the agency and then appeal an unfavorable outcome to the MSPB. *Id*. (citing 5 CFR § 1201.154(b); 29 CFR § 1614.302(d)(1)(i)). If the employee chooses to proceed in a mixed case before the MSPB, and the personnel action is upheld, the employee may seek review of the MSPB's ruling by a United States District Court. *Perry v. MSPB*, 582 U.S. 420, 432 (2016).

**B.**

Appellant Anthony Perry worked for the Census Bureau from 1984 to 2012. While employed at the Bureau, Perry filed several EEO complaints alleging race- and age-based discrimination — Perry is African-American and was in his mid-forties at the time that he filed his complaints.

In 2011, the Bureau determined that Perry often was absent during his scheduled working hours. The Bureau learned of Perry's unauthorized absences when it audited his identification-badge monitoring reports, which kept track of when he scanned in and out of the building. When Perry's supervisor implemented a policy that required all employees to sign a daily attendance log, Perry initially refused to comply.

The Bureau decided to discipline Perry for his conduct. In the Bureau's view, Perry's absenteeism and recalcitrance "adversely impacted the [a]gency" and raised questions about Perry's "integrity and reliability." J.A. 132. The Bureau balanced Perry's violations against his twenty-six years of service and found that the "egregiousness and repetitive nature" of Perry's misconduct necessitated termination. *Id.* at 133. Thus, on June 7, 2011, the Bureau proposed removing Perry from his "position and Federal service to promote the efficiency of the service." *Id.*; *see* 5 U.S.C. § 7513(a) (agency may take serious disciplinary actions under the CSRA if doing so would "promote the efficiency of the service").

Perry submitted a formal response. With respect to his absences from work, Perry argued that he had osteoarthritis, which required him to walk frequently. Perry claimed that he had told his supervisor about his medical condition and that the supervisor had told him to "do what [he] needed to do." J.A. 137. Perry understood those words to confer "an informal accommodation for [his health] problem," which included permission for him to take frequent walks and other exercise outside of the office building. *Id*. But Perry conceded that he had used some of the time he spent outside of the building during working hours to prepare his EEO actions "in [his] car." *Id.* Furthermore, Perry admitted that he had "failed communications" with his supervisor about

recording leave. *Id.* at 137–38. With respect to his refusal to sign the attendance log, Perry stated that he had "requested an explanation" about why he was being required to sign in, and that he had begun signing the log after his supervisor provided an explanation. *Id.* at 138. Based on all those circumstances, Perry proposed as a "settlement" that, instead of being fired, he could serve a 14-day suspension and repay any salary that the Bureau thought necessary. *Id.* at 140.

The Bureau refused Perry's offer. After some back and forth, however, the Bureau and Perry came to an agreement: Perry would serve a 30-day suspension, leave voluntarily before September 4, 2012, agree "not to file a claim against the Agency concerning this matter," and withdraw his pending discrimination complaints. J.A. 109–10, 433. Perry retired in March 2012.

## C.

Soon after Perry left the Bureau, he decided to challenge the Bureau's actions that led to the end of his employment. To do so, Perry filed an appeal before the MSPB. Although the MSPB's jurisdiction is limited to "particularly serious" adverse employment actions, such as an involuntary termination, *Kloeckner*, 568 U.S. at 44, Perry alleged that the Bureau had coerced him into retiring, rendering his departure involuntary. *See id.* (noting that the MSPB possesses jurisdiction over an adverse employment action "[i]f (but only if) the action is particularly serious").

Perry leveled two sets of substantive allegations. First, he claimed that the Bureau had discriminated against him based on his race, age, and disability, and had retaliated against him for filing complaints with the EEO office. Second, he claimed that the Bureau's decision to terminate his employment violated the CSRA because it failed to take

account of his disability and accommodations. *See King*, 77 F.3d at 1363 (noting that an adverse action cannot be sustained if the employee did not engage in any misconduct). Thus, Perry alleged discrimination that was intertwined with an adverse employment action within the MSPB's jurisdiction; and he pled violations of both the CSRA and federal anti-discrimination laws — in other words, he brought a mixed case. *See Kloeckner*, 568 U.S. at 44.

An ALJ initially dismissed Perry's appeal without a hearing, on the ground that the MSPB lacks jurisdiction over voluntary decisions to retire. But Perry appealed to the Board, arguing in relevant part that the Bureau had coerced him into retiring by unjustifiably threatening to terminate him. *See Schultz v. U.S. Navy*, 810 F.2d 1133, 1136 (Fed. Cir. 1987) (noting that the Board has jurisdiction if agency lacks "reasonable grounds for threatening to take an adverse action"). The Board rejected Perry's claim that the Bureau lacked reasonable grounds to fire him based on his absenteeism, noting that Perry's "own statements" demonstrated that there was "at least some basis for" his termination. J.A. 349–50. After remanding the case to an ALJ to address a different issue, the Board ultimately affirmed the dismissal of Perry's case because, it concluded, his retirement had been voluntary and the MSPB therefore lacked jurisdiction.

Perry, acting pro se, petitioned for review of the Board's decision in this court. We appointed amicus curiae to present arguments in support of Perry's position. The parties ultimately agreed that the case was not properly before the D.C. Circuit but disputed which court should review the Board's decision instead. *See Perry v. MSPB*, 829 F.3d 760, 763 (D.C. Cir. 2016). Perry and amicus argued that the mixed case should be heard in the district court. *Id.* The

government argued that the case should be decided in the Federal Circuit. *Id.* After we transferred the case to the Federal Circuit, the Supreme Court granted certiorari and reversed, holding that "[m]ixed cases shall be filed in district court." *Perry*, 582 U.S. at 431 (cleaned up). On remand from the Supreme Court, we transferred the case to the district court. *See Perry v. Ross*, 697 F. App'x 18 (D.C. Cir. 2017).

The district court granted summary judgment in favor of the government. *Perry v. Ross*, No. 17-cv-1932, 2022 WL 4598650, at *14 (D.D.C. Sept. 30, 2022). First, the district court reviewed and affirmed the Board's dismissal of Perry's mixed case for lack of jurisdiction. The district court reasoned that retirements are generally voluntary and therefore lie outside the Board's jurisdiction. But the district court recognized that a retirement may be deemed involuntary if an agency initiates the separation process despite knowing that it cannot justify terminating the employee. *See Schultz*, 810 F.2d at 1136. Applying that standard, the district court affirmed the Board's holding that the Bureau had reasonable grounds to terminate Perry's employment. In relevant part, the court upheld the Board's conclusion that Perry's own "admissions regarding his ongoing absences from work and his failure to complete leave requests" demonstrated "at least some basis for the proposed discipline." *Perry*, 2022 WL 4598650, at *8.

Second, the district court entered summary judgment in favor of the government with respect to Perry's discrimination claims. Because the Board had not reached a decision on the merits of those claims, the district court concluded that it could only consider whether the Board's jurisdictional dismissal of the entire mixed case was arbitrary or capricious. The district court thus did not separately consider the merits of Perry's discrimination claims. Because

the district court had decided to affirm the Board's dismissal of the mixed case, it concluded that the government was entitled to summary judgment on Perry's discrimination claims as well.[1]

Perry appealed the district court's ruling and filed a pro se motion for summary reversal. He argued, in relevant part, that he had a "right to . . . trial de novo" on his discrimination claims. 5 U.S.C. § 7703(c). We denied Perry's motion for summary reversal and appointed amicus curiae to present arguments in support of Perry's position. Perry has adopted amicus's arguments before us.

## II.

Although Perry brought both discrimination claims and a CSRA claim before the MSPB, the Board determined that it lacked jurisdiction to hear Perry's mixed case because his retirement from the Bureau was voluntary. The Board thus dismissed the entire case without addressing Perry's discrimination claims. In reviewing the MSPB's decision, the district court affirmed the Board's dismissal of the case and did not consider the merits of the discrimination claims. Perry now challenges the district court's disposition of both parts of his mixed case: First, Perry contends, and the government now concedes, that the district court erred by failing to allow him to litigate his discrimination claims de novo. Second, Perry argues that the Board's dismissal of his mixed case should be reversed because he was entitled to an evidentiary hearing before an ALJ to determine whether his retirement was involuntary under the CSRA. We address each argument in turn.

---

[1] The district court also rejected Perry's other claims, which are not pressed on appeal.

11

**A.**

This case requires us to clarify the standard of review that the district court must apply when reviewing a ruling of the MSPB in a mixed case. The district court reviewed and affirmed the Board's dismissal of the case, properly applying a deferential standard of review. *See infra* Part II.B; 5 U.S.C. § 7703(c). But it did not conduct a separate, de novo proceeding to resolve Perry's discrimination claims. Instead, the district court relied on its affirmance of the MSPB's dismissal of the case and reasoned that a plaintiff is not entitled to a trial de novo on a discrimination claim unless the MSPB decided that claim on the merits. *Perry*, 2022 WL 4598650, at *12–*13 ("Because the MSPB decided that it lacked jurisdiction over Perry's discrimination claims, this court's task is to decide if that decision was arbitrary and capricious — not whether the discrimination claims have merit.").

All parties now agree that the district court erred and that it was required to consider Perry's discrimination claims de novo even if the Board did not address those claims. To start, the provision of the CSRA that addresses judicial review of MSPB decisions states that "in the case of discrimination . . . the employee or applicant shall have the right to have the facts subject to trial de novo by the reviewing court." 5 U.S.C. § 7703(c). Moreover, the Supreme Court has held that in mixed cases, the "reviewing court" identified in the statute is the federal district court — not the Federal Circuit, where other MSPB appeals are heard. *See Perry*, 582 U.S. at 431; 5 U.S.C. § 7703. This is evidently because the Federal Circuit, an appellate court, cannot oversee the litigation of discrimination claims and conduct a "trial de novo," if necessary. *See Perry*, 582 U.S. at 429 (citing 5 U.S.C. § 7703(c)). In sum, under the relevant statute and Supreme

Court precedent, Perry is entitled to have the "facts" of his discrimination claims "subject to trial de novo" in the district court.

Any confusion on this point may be rooted in our case law, which historically distinguished between different types of mixed cases. We previously held that mixed cases in which the Board reached a decision on the merits should be reviewed in the district court; but other types of mixed cases in which the Board dismissed the case on procedural or jurisdictional grounds should be reviewed in the Federal Circuit. *See Perry*, 829 F.3d at 762; *Powell v. Dep't of Def.*, 158 F.3d 597, 599 (D.C. Cir. 1988). The Supreme Court abrogated that line of cases in two decisions. First, in *Kloeckner*, the Supreme Court held that mixed cases decided by the MSPB on procedural grounds should proceed in district court. *See* 568 U.S. at 56 (noting that mixed cases belong in district court whether the MSPB decided the case "on procedural grounds or instead on the merits"). Then, in Perry's initial appeal of the Board's decision, the Supreme Court made explicit that all mixed cases should be heard in district court. *Perry*, 582 U.S. at 431 ("We announced a clear rule in *Kloeckner*: Mixed cases shall be filed in district court." (cleaned up)). Together, *Kloeckner* and *Perry* instruct that a mixed case should be "review[ed]" in district court, 5 U.S.C. § 7703(c), regardless of whether the Board decided it on the merits, on procedural grounds, or on jurisdictional grounds; as the Court explained, those labels are "slippery" and attempting to draw a "distinction" between them "may be unworkable." *Perry*, 582 U.S. at 434–36.

The district court thus was required, as the "reviewing court," to provide a "trial de novo" on Perry's claims of discrimination. 5 U.S.C. § 7703(c). Although the term "reviewing court" may seem to imply that the district court

should "review" only a merits decision by the MSPB on a discrimination claim, that term is used because the court must "review" the entire mixed case — for example, in this case, the district court should have "reviewed" the MSPB's jurisdictional dismissal of the entire case and then separately considered the discrimination claims. Indeed, the statute specifies that the employee has a right to a "trial de novo" "in the case of discrimination," *i.e.*, on the part of the mixed case that constitutes a discrimination claim. *Id*. That is true even though the MSPB dismissed the mixed case for lack of jurisdiction. Because the Supreme Court considered and rejected making any distinction between merits- and non-merits-based decisions by the Board in this context, *Perry*, 582 U.S. at 434–37, a district court's statutory obligation to consider discrimination claims de novo cannot depend on whether the MSPB reached a decision on the merits. In sum, all mixed cases decided by the MSPB are reviewed by the district court, *id.* at 431, and the district court must allow all discrimination claims in mixed cases to be tried or litigated de novo, 5 U.S.C. § 7703(c).[2]

---

[2] Despite the government's acknowledgement here that the discrimination claims incorporated in a mixed case must be reviewed de novo, the government took a different position before the district court. The government claimed that the district court would not need to resolve Perry's discrimination claims if it concluded that the MSPB properly "dismissed [Perry's case] for lack of jurisdiction." *See* Gov't Mot. Sum. J., ECF No. 34-3, at 7 n.3. And the government requested dismissal of the entire case, including the discrimination claims, based on an argument that the MSPB's jurisdictional determination was sound. *See id.* at 12 ("For the reasons set forth above, Defendant respectfully request[s] that the Court affirm the jurisdictional determination of the MSPB and dismiss this case."). The district court apparently was misled by the government's incorrect representations.

The foregoing framework raises the question of whether Perry was required to pursue an EEO complaint before the agency and to exhaust his administrative remedies before litigating the discrimination part of his mixed case in the district court. Perry urges us to hold that plaintiffs in mixed cases are not required to exhaust their administrative remedies, even though that step would be mandatory if they instead brought a pure discrimination claim under an anti-discrimination statute. *See supra* Part I.A. But as the parties now agree, Perry filed an EEO complaint in this case, albeit after he filed his appeal in the MSPB; and Perry's EEO complaint was resolved on the merits by the agency and later affirmed by the EEOC. Thus, it is undisputed that Perry exhausted his administrative remedies. Under the circumstances, the issue of whether administrative exhaustion is necessary in a mixed case is not relevant to the resolution of this appeal; and we therefore leave it for another day. *See United States v. Philip Morris USA Inc.*, 566 F.3d 1095, 1118 (D.C. Cir. 2009) ("Because these challenges have no impact on the outcome of this appeal, we decline to address them.").

**B.**

Perry challenges the Board's dismissal of his mixed case for lack of jurisdiction, based on its conclusion that he voluntarily retired from the Bureau. Perry argues that he sufficiently alleged facts that entitled him to an evidentiary hearing on the voluntariness of his retirement. We disagree.

Although we review the district court's grant of summary judgment de novo, *Navajo Nation v. Dep't of the Interior*, 57 F.4th 285, 291 (D.C. Cir. 2023), our review of the underlying jurisdictional determination by the Board is deferential. We will set aside the Board's jurisdictional ruling only if we conclude that it was "arbitrary or capricious, obtained without

compliance with lawful procedures, unsupported by substantial evidence or otherwise not in accordance with law." *Barnes v. Small*, 840 F.2d 972, 979 (D.C. Cir. 1988); *see* 5 U.S.C. § 7703(c).

As discussed *supra*, the Board cannot exercise jurisdiction over disputes about an employee's voluntary retirement, but the Board has jurisdiction if the employee demonstrates that his retirement was, in fact, not voluntary. *See Garcia v. Dep't of Homeland Sec.*, 437 F.3d 1322, 1324 (Fed. Cir. 2006). Under longstanding Board precedent, a retirement is considered involuntary if the retirement occurred after the "agency threatened to take a future disciplinary action that [the agency] knew or should have known could not be substantiated." *See Fassett v. Postal Serv.*, 85 M.S.P.R. 677, 679 (2000). The touchstone for "should have known" is reasonableness. Thus, if the agency has some "reasonable grounds" for terminating an employee and the employee then resigns, that resignation is voluntary. *See Schultz*, 810 F.2d at 1136; *Locke v. Postal Serv.*, 61 M.S.P.R. 283, 288 (1994). An employee is entitled to an evidentiary hearing on the voluntariness of their resignation if they make a "nonfrivolous allegation" of facts demonstrating that the agency lacked reasonable grounds for terminating the employee. *Deines v. Dep't of Energy*, 98 M.S.P.R. 389, 395 (2005).

Here, Perry contends that he made a "nonfrivolous allegation" of facts demonstrating that the agency lacked reasonable grounds for terminating his employment. *See Deines*, 98 M.S.P.R. at 395. Specifically, he claims that his frequent absences from work did not furnish "reasonable grounds" for termination because he had an unofficial accommodation for osteoarthritis that allowed him to be absent as necessary. Thus, he argues, he is entitled to an evidentiary hearing on whether his absences were justifiable.

16

Perry's argument fails because the alleged informal accommodation did not account for all of his absences. His own submissions to the Board confirmed that he sometimes was absent from work for reasons unrelated to osteoarthritis. He stated that he took time to "deal with the emotional . . . stress of at least six years of . . . struggles with the agency." J.A. 137. He also admitted that he prepared his EEO actions in his car during working hours. And he acknowledged skipping meetings that he was not "emotionally able to attend." *Id.* at 138. Thus, at least some of Perry's absences were not attributable to any accommodation for osteoarthritis, and those undisputedly unexcused absences provided reasonable grounds for Perry's termination.

The instant case is similar to *Bahrke v. Postal Service*, in which an employee who entered a settlement agreement with his employing agency attempted to demonstrate that there were no reasonable grounds to sustain the agency's original threat to remove him. *See* 98 M.S.P.R. 513, 516–17 (2005). The agency had proposed to terminate the employee because he was absent too often, *id.* at 516, but the employee claimed that he was entitled to take leave under the Family and Medical Leave Act ("FMLA") on the days in question, *id.* at 519. Even though the "agency [had] approved the [] FMLA leave," the Board noted that there were other "unscheduled absences during the [relevant] period," not attributable to FMLA leave. *Id.* at 520–21. The Board thus determined that the agency had reasonable grounds to discipline Bahrke and that his entry into the settlement agreement was not involuntary. *Id.* at 521 (agency had justification where "of the eleven unscheduled absences . . . at least one appears to have been" for an impermissible reason). Similarly here, the Bureau had reasonable grounds to terminate Perry based on his concededly unapproved absences, even if other absences might have been excused. The Board's reasoning in this case

was consistent with its precedent and was not arbitrary or capricious. *See Barnes*, 840 F.2d at 979.

Perry's arguments to the contrary are unavailing. First, Perry asks us to apply what are known as the "*Douglas*" factors to determine conclusively that his termination would not have been justified. *See Douglas*, 5 M.S.P.R at 305–06 (identifying twelve non-exhaustive factors relevant to evaluating the lawfulness of an agency's employment action).[3] But our task is not to make such a determination. We need only decide whether the Board's conclusion that the Bureau had reasonable grounds to fire Perry was "arbitrary or capricious . . . unsupported by substantial evidence or

---

[3] Those factors are: (1) "The nature and seriousness of the [employee's] offense"; (2) "the employee's job level and type of employment"; (3) "the employee's past disciplinary record"; (4) "the employee's past work record, including length of service, performance on the job, ability to get along with fellow workers, and dependability"; (5) "the effect of the offense upon the employee's ability to perform at a satisfactory level and its effect upon supervisors' confidence in the employee's ability to perform assigned duties"; (6) "consistency of the penalty with those imposed upon other employees for the same or similar offenses"; (7) "consistency of the penalty with any applicable agency table of penalties"; (8) "the notoriety of the offense or its impact upon the reputation of the agency"; (9) "the clarity with which the employee was on notice of any rules that [were] violated in committing the offense, or had been warned about the conduct in question"; (10) "potential for the employee's rehabilitation"; (11) "mitigating circumstances surrounding the offense such as unusual job tensions, personality problems, mental impairment, harassment, or bad faith, malice or provocation on the part of others involved in the matter"; and (12) "the adequacy and effectiveness of alternative sanctions to deter such conduct in the future by the employee or others." *Douglas*, 5 M.S.P.R. at 305–06.

otherwise not in accordance with law." *Barnes*, 840 F.2d at 979; 5 U.S.C. § 7703(c); *cf. Bahrke*, 98 M.S.P.R. at 521. The fact that some *Douglas* factors might weigh in Perry's favor does not render arbitrary or capricious the Board's conclusion that the Bureau had reasonable grounds for terminating his employment.

Next, Perry claims that the Board's decision was insufficiently reasoned. Although the Board's analysis was brief, it concluded that at least some of Perry's absences were unrelated to his alleged accommodation for osteoarthritis. *See* J.A. 349–50 (noting that "there appears to have been at least some basis for the proposed discipline" because, for example, Perry admitted some absences were attributable to "failed communications between him and his supervisor" (cleaned up)). The Board's reasoning is thus "reasonably . . . discern[able]" and was not arbitrary or capricious. *Alaska Dep't of Env't Conservation v. EPA*, 540 U.S. 461, 497 (2004) (cleaned up).

\* \* \*

For the foregoing reasons, we reverse the district court's dismissal of Perry's discrimination claims and remand for further proceedings on those claims, consistent with this opinion. We affirm the district court's ruling that the MSPB properly dismissed Perry's mixed case because the Board lacked jurisdiction to hear claims arising from Perry's voluntary retirement.

*So ordered.*